**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47119**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: September 15, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| ADAM ANDREW NELSON, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Order denying motion to suppress, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Adam Andrew Nelson appeals from the judgment of conviction entered on his conditional guilty plea to possession of a controlled substance. Nelson asserts the district court erred in denying his motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Neither party disputes the following factual findings, which the district court made in support of its written decision denying Nelson's motion to dismiss:

> [Nelson] was at a self-service car wash around 4:00 a.m. to wash his car before going to work. Two police officers who were passing by decided to stop and talk to him although he was doing nothing suspicious. The lead officer immediately asked him what he was doing. He told them he was washing his car before going to work. The officer then asked if he was on probation or parole and

1

he replied that he was on parole.[1]  The officers continued to question him asking if he had a gun or suspicious items.  The entire encounter was a fishing expedition.  [Nelson] was cooperative.  As a condition of parole, on June 8, 2018, [Nelson] signed the Idaho Department of Correction Agreement of Supervision [parole agreement] containing the following waiver:

> 5.  **Search**:  I consent to the search of my person, residence, vehicle, personal property or structures owned or leased by me, or for which I am the controlling authority conducted by any agent of IDOC or a law enforcement officer.  I hereby waive my rights under the Fourth Amendment and the Idaho constitution concerning searches.

[Nelson] had no outstanding warrants.  Although he said several times that he was worried he would be late for work, the officers continued to ask him for consent to search the vehicle.  Eventually, [Nelson] consented to the officers' request to search the vehicle.  The officers found methamphetamine, and [Nelson] was charged with possession of a controlled substance and paraphernalia in this case.

Nelson filed a motion to suppress the evidence from this encounter.  During the hearing on his motion, neither party called any witnesses, but the State admitted a video of the encounter from one of the officer's body cameras and Nelson's parole agreement.  Based on this evidence, the district court rejected Nelson's argument that the officers unlawfully detained him without reasonable suspicion of criminal activity.

Regarding the officers' initial encounter with Nelson, the district court stated:

> When a person is in a public place, like the car wash in this case, no Constitutional right is implicated when a police officer walks over and talks to a person. . . .  There was no problem when the officers parked their patrol vehicle and went over to talk to [Nelson] at the car wash.

Although the district court did not expressly state the officers' initial encounter with Nelson was consensual, the court's statements in the context of the legal authorities it cited indicate the court implicitly concluded the officers' initial contact with Nelson was consensual.  Further, the court's decision suggests that, once the officers learned Nelson was on parole, they could continue to question him and seek consent to search his vehicle.

Ultimately, the district court rejected Nelson's argument that the officers searched his vehicle without valid consent and ruled "there was no basis to challenge the search of his vehicle" because Nelson "signed a valid, extensive waiver of his Fourth Amendment right to be free from warrantless searches of his person and property when he was paroled."  After the court

---

[1]     The district court also found the officers learned Nelson was on parole "within less than a minute" after approaching him.  Neither party disputes this factual finding.

denied Nelson's motion to suppress, he entered a conditional guilty plea and reserved his right to appeal this denial. Nelson timely appeals.

## II.

## STANDARD OF REVIEW

Ordinarily, the standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Under certain limited circumstances, however, this Court may freely review and weigh the evidence in the same manner as the trial court. *State v. Andersen*, 164 Idaho 309, 312, 429 P.3d 850, 853 (2018) (applying free review standard to appeal of decision on motion to suppress). Where the parties did not present any witnesses and this Court has the exact same evidence before it as the trial court considered, this Court need not extend the usual deference to the trial court's evaluation of the evidence. *Id.*

In this case, the only evidence before the district court was Nelson's parole agreement and the video from the officer's body camera. This exact same evidence is before this Court. Accordingly, we freely review the district court's denial of Nelson's motion to suppress for two reasons. First, although neither party specifically challenges the district court's factual findings, the court did not expressly conclude from those findings that the initial encounter between the officers and Nelson was consensual, but whether this encounter was consensual is the precise issue on appeal. Second, Nelson highlights on appeal the court's statement in its written order that "the entire encounter was a fishing expedition," which suggests the court somehow viewed the officers' conduct as improper despite denying Nelson's motion to suppress. For these reasons, we freely review the evidence in this case to address Nelson's appellate argument.

## III.

## ANALYSIS

On appeal, Nelson acknowledges that he waived his constitutional rights under the Fourth Amendment and the Idaho Constitution to be free from warrantless searches as a condition of parole, and he does not challenge the district court's conclusion that this waiver justified the search of his vehicle. Further, Nelson does not challenge the officers' conduct once they learned he was on parole. Instead, Nelson only disputes the court's implicit ruling that the officers' initial encounter with him was consensual. Accordingly, our analysis focuses on this narrow issue.

The Fourth Amendment to the United States Constitution and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991).

A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions, or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498.

Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.* "Therefore, the proper inquiry in determining whether a seizure occurred is whether, under all the circumstances surrounding an encounter, a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter." *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004) (internal quotation marks omitted).

The United States Supreme Court, in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), stated:

> Examples of circumstances that might indicate seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Other circumstances that may indicate a seizure include whether an officer used overhead emergency lights or engaged sirens, *Page*, 140 Idaho at 844, 103 P.3d at 487, or blocked a vehicle's exit route. *State v. Pieper*, 163 Idaho 732, 735, 418 P.3d 1241, 1244 (Ct. App. 2018).

On appeal, the parties dispute whether the facts support the conclusion that the officers' initial encounter with Nelson before learning he was on parole was consensual or an unlawful seizure. Nelson argues the officers seized him without reasonable suspicion "at the start of their interaction with him before they learned he was on parole." In support, Nelson contends a reasonable person in his position would not have felt free to leave because two uniformed police officers confronted him in the early morning hours; they parked their patrol car next to his vehicle; one of the "officer's hand was near his weapon holster"; and the officers questioned Nelson about his vehicle registration, his residence, and his arrest history.

The State disputes this argument asserting that, during the officers' initial contact with Nelson, they did not exhibit any show of authority or use any means of force which would have led a reasonable person to believe he was not free to leave. Specifically, the State notes that the officers did not activate their patrol car lights or siren; did not block Nelson's vehicle; did not physically touch Nelson; did not draw a weapon; did not give Nelson any orders or directives; and used a conversational, casual tone.

As the district court correctly ruled, the entire initial exchange between Nelson and the officers before the officers learned Nelson was on parole spanned less than a minute. During this time, the following exchange occurred:

| | |
|---|---|
| [OFFICER 1]: | How are you doing tonight? |
| [NELSON]: | Fine. How are you doing? |
| [OFFICER 1]: | Not bad. |
| [OFFICER 2]: | What's going on, bro? |
| [NELSON]: | Washing my car. |
| [OFFICER 2]: | Oh, you're washing your car? Is it registered to you? |
| [NELSON]: | Yes. |
| [OFFICER 2]: | Alright. Is anyone else inside or anything? |

```
[NELSON]:      [shakes his head no]
[OFFICER 2]:   No?  Where do you live at?  Like here in the city?
[NELSON]:      Yeah.
[OFFICER 2]:   Alright, cool.  Hey do you have your I.D. or anything on you,
               man?
```

As Nelson was handing over his driver's license, Officer 2 asked, "You ever been arrested or anything silly like that?"  Nelson responded, "Anything silly?  That's your job.  Or part of your job.  Yeah.  Oh yeah."  Officer 2 asked if Nelson was on probation or parole.  Nelson replied that he was on parole.

Based on the totality of circumstances, we agree with the State that this exchange was consensual and did not constitute an unlawful seizure.  "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions.  So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required."  *Bostick*, 501 U.S. at 434 (internal citation and quotation marks omitted).  In this case, none of the indicia of a seizure existed:  The officers' presence was not threatening; although armed, they did not display their weapons, did not physically touch Nelson, did not use language or a tone compelling compliance, did not activate the patrol vehicle's overhead lights or siren, and did not block Nelson's vehicle.  Further, that Nelson was cooperative does not indicate that he was yielding to a show of authority by the officers.  Accordingly, we conclude that a reasonable person in Nelson's position would have felt free to go about his business or to leave.

## IV.

## CONCLUSION

We hold that, under the totality of the circumstances, the officers' initial encounter with Nelson before they learned he was on parole was consensual and that the district court did not err in denying Nelson's motion to suppress.  Accordingly, we affirm the court's order denying the motion.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.